975 F.2d 1388
 Charles K. ELDER; Beverly S. Elder, husband and wife,
Plaintiffs-Appellants,
v.
R.D. HOLLOWAY; Other Unknown Employees and/or Agents,
individually and in their official capacity as
police officers for the Ada County
Sheriff's Office, et al.,
Defendants-Appellees.
 No. 91-35146.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 8, 1991.
Decided Dec. 19, 1991.
As Amended Sept. 17, 1992.
 
 John Charles Lynn, Lynn, Scott & Hackney, Boise, Idaho, for plaintiffs-appellants.
 James J. Davis, Boise, Idaho, for defendants-appellees.
 Appeal from the United States District Court for the District of Idaho.
 Before: WALLACE, Chief Judge, HUG, and RYMER, Circuit Judges.
 RYMER, Circuit Judge:
 
 
 1
 This is a 42 U.S.C. § 1983 action in which Charles Elder claims that his constitutional right not to be arrested inside his home without a valid Idaho warrant was violated when law enforcement officers, after setting up armed surveillance, called him to come outside the house and arrested him on the porch. In opposition to the officers' motion for summary judgment on qualified immunity, Elder proffered three out-of-state cases to show that the law was clearly established that a warrant was required to make a "constructive entry" into the house. The district court found on the basis of those cases that the law was not clear, and ruled in favor of the officers. We agree with the district court's analysis. There is, however, Ninth Circuit authority which was not called to the attention of the district court that might have alerted a reasonable officer to the constitutional implications of putting a suspect under arrest after he had come outside his house pursuant to an order to exit.
 
 
 2
 Elder's appeal thus raises a narrow question: whether a summary judgment on qualified immunity in favor of a law enforcement officer which was properly granted on the record presented to the district court, should nevertheless be reversed because there are legal authorities that plaintiff did not present to the district court or to us on appeal which suggest that, contrary to what the district court found, the law was clearly established at the time of the incident. Because the plaintiff in a § 1983 action confronted with a request for judgment on grounds of qualified immunity bears the burden of proving that the constitutional right allegedly violated was clearly established at the time of the incident, we affirm.
 
 
 3
 * After receiving word that Charles Elder, who was wanted on Florida warrants and considered dangerous, was in town, officer R.D. Holloway and others in the Ada County Sheriff's Office made plans to arrest him outside his place of work. Elder and his brother William got wind of the officers' plans, however, left work early, and returned to William's house (where Elder was living, too). Holloway and a number of other officers set up surveillance at the house. When William tried to ride away on horseback, he was detained. Officers found out that Elder had access to weapons in the house. Eventually, Holloway and William made telephone contact with Elder, who meanwhile had suffered two epileptic seizures. Holloway advised him that if he was unable to walk out of the house, he should crawl. Elder walked out a few minutes later, but fell face down, hitting his head and sustaining severe injuries. This happened on April 27, 1987.
 
 
 4
 Elder's complaint alleges that these events violated his constitutional right not to be arrested in his home without a valid Idaho warrant. Both parties moved for summary judgment.
 
 
 5
 On the issue of qualified immunity, Elder argued in the district court that the law was clearly established that an Idaho warrant was required to make a "constructive entry" over the threshold. He proffered Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), for the proposition that, as of April 27, 1987 (when the incident occurred), it was clearly established that the Fourth Amendment prohibited a warrantless entry into a suspect's home to make a routine felony arrest absent consent or exigent circumstances. No one disputed this general principle, and the district court correctly recognized that the law, where there is an actual entry into the home, is clearly established.
 
 
 6
 Nor did the parties disagree about "the level of generality at which the relevant 'legal rule' is to be identified." Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987). They disagreed whether, in 1987, there was binding precedent which clearly established when an arrest "constructively" takes place inside a house if no law enforcement officer steps inside the door and the suspect is physically placed under arrest outside the door. Elder proffered three cases in support of his claim that the law clearly established that there was a "constructive entry": State v. Holeman, 103 Wash.2d 426, 693 P.2d 89 (1985), State v. Morse, 125 N.H. 403, 480 A.2d 183 (1984), and Scroggins v. State, 276 Ark. 177, 633 S.W.2d 33 (1982). The district court reviewed the cases identified by Elder and found there was no controlling Idaho or Ninth Circuit case law on the issue of "constructive entry." That being so, it concluded that the officers could not have violated Elder's clearly established rights when the law was not clear as to when a constructive entry occurs, and the officers could reasonably have believed they could effectuate an arrest outside the door without violating any clearly established right.
 
 
 7
 On appeal, Elder argues that the law was clearly established that the officers were required to have an Idaho warrant prior to ordering him out of the house, because the facts constitute a constructive crossing of the threshold. Elder identifies the same cases as showing that the law was clearly established that the arrest constructively occurred inside rather than outside his house, as he did in the district court--Holeman, Morse, and Scroggins--and also relies on Duncan v. Storie, 869 F.2d 1100 (8th Cir.), cert. denied, 493 U.S. 852, 110 S.Ct. 152, 107 L.Ed.2d 110 (1989). Duncan post-dates the incident and is therefore not material; it does, however, cite to United States v. Al-Azzawy, 784 F.2d 890 (9th Cir.1985), cert. denied, 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986).
 
 
 8
 In Al-Azzawy, police surrounded the suspect's house and, with weapons drawn, ordered him to leave. When he emerged, he was taken into custody. We held that exigent circumstances justified the warrantless arrest. Before reaching this issue, however, we first addressed the question whether the arrest had taken place inside the suspect's house; if not, the issue of exigent circumstances would have been moot. We determined that, even though the suspect had exited the house and was physically seized outside, he was in fact "arrested inside his residence without a warrant." Id. at 893. In so concluding, we reaffirmed the rule that "it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home." Id. (quoting United States v. Johnson, 626 F.2d 753, 757 (9th Cir.1980), aff'd on other grounds, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982)). Since we reversed the district court "on the grounds that the warrantless arrest and search were justified by exigent circumstances," id. at 895, our conclusion as to where the arrest took place may be regarded as dicta, unnecessary to this result.
 
 
 9
 We have no difficulty with the district court's decision on the record it was presented. No case Elder identified clearly established whether an arrest takes place inside or outside the home, when the suspect is inside but is summoned outside by law enforcement officers who have surrounded the premises.
 
 
 10
 We are, however, troubled by the possibility that Al-Azzawy 's initial conclusion might have alerted a reasonable officer to the constitutional implications of putting a suspect under arrest after he had come outside his house pursuant to an order to exit. Despite the opportunity at oral argument and subsequent briefing, neither party has shed much light on whether Al-Azzawy requires us to reverse despite Elder's failure to rely on it.[1]
 
 
 11
 "[T]he determination of whether [a] right was so 'clearly established' as to alert a reasonable officer to its constitutional parameters" presents a "pure question[ ] of law." Romero v. Kitsap County, 931 F.2d 624, 627-28 (9th Cir.1991); see also Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (referring to the "essentially legal question" of qualified good faith immunity). At the same time, "[t]he plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct. If plaintiff carries this burden, then the officers must prove that their conduct was reasonable even though it might have violated constitutional standards." Romero, 931 F.2d at 627 (citations omitted); Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir.1992).
 
 II
 
 12
 In § 1983 actions where qualified immunity is at issue, it has been the rule that the plaintiff bears the burden of showing that the fact-specific constitutional right allegedly violated was clearly established at the time of the incident since Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), and Bothke v. Fluor Eng'rs and Constructors, Inc., 739 F.2d 484 (9th Cir.1984), following Davis in this circuit. In Davis, the Supreme Court held that "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." 468 U.S. at 197, 104 S.Ct. at 3020-21.
 
 
 13
 Our court has reiterated the burden of proof rule a dozen times since Bothke,[2] but until now we have not been called upon to reconcile it with the equally well settled rule that the determination of whether the constitutional right was clearly established presents an issue of law. We believe that neither rule can be ignored, and hold that the plaintiff's burden in responding to a request for judgment based on qualified immunity is to identify the universe of statutory or decisional law from which the court can determine whether the right allegedly violated was clearly established. The district court's determination of whether that universe of authority clearly established the law so as to alert a reasonable officer to the constitutional parameters of the right allegedly violated is an issue of law, as to which our review is de novo.
 
 
 14
 * Under the rule of Davis v. Scherer, a defendant is presumed to be immune from damages unless the plaintiff shows that the right allegedly violated was clearly established at the time of the conduct at issue. 468 U.S. at 197, 104 S.Ct. at 3021. Thus, Holloway had qualified immunity unless Elder overcame it by "showing" that the right not to have his house constructively entered was clearly established (or that there are triable issues of fact that must be resolved before a determination can be made whether, as to those specific facts, the law was clearly established). If the plaintiff is not expected to make any "showing" except as to what happened factually, leaving it to the court to come up with the relevant universe of authority from which to find whether the law was clearly established, the Davis rule would be flipped on its head.
 
 
 15
 Expecting the plaintiff to identify all potentially relevant authorities that bear on the court's determination of whether the law was clearly established comports with the Supreme Court's recent approach to qualified immunity. From Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), through Davis and Anderson, 483 U.S. at 635, 107 S.Ct. at 3036, to Hunter v. Bryant, --- U.S. ----, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), the Court has made qualified immunity the presumptive norm, which can be overcome if the plaintiff shows that the contours of a fact-specific right are so clear that a reasonable official would understand that what he is doing violates that right. Requiring the plaintiff to identify the universe of authority that is relevant to the fact-specific right allegedly violated follows naturally from this direction.
 
 
 16
 While most of our qualified immunity opinions make no mention of who came up with the relevant authority, we have in practice looked to the cases identified by the plaintiff. On several occasions, after stating that the plaintiff bears the burden of proof, we have explicitly indicated which cases the plaintiff identifies, and have discussed only those cases in resolving the appeal. See, e.g., Romero, 931 F.2d at 629 (plaintiffs maintain that despite federal law, decisions of state courts demonstrate law was clearly established; they cite particular case, which court finds did not adjudicate right at issue); Baker v. Racansky, 887 F.2d 183, 188 (9th Cir.1989) (plaintiffs rely on four cases which they assert clearly established right to hearing or warrant); Backlund v. Barnhart, 778 F.2d 1386, 1389 (9th Cir.1985) (plaintiffs must show they had clearly established right to exercise religious beliefs about punishment on foster care child; "[t]hey fail to cite any pertinent authority on this issue").[3] At least two other circuits have indicated that a plaintiff, in order to carry his burden of proving that the law was clearly established (and thus to avoid summary judgment in favor of the defendant), must specifically identify the clearly established law. See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir.1988) (burden is on plaintiff to identify clearly established law; if plaintiff fails to carry this burden, defendant prevails); see also, e.g., Upton v. Thompson, 930 F.2d 1209, 1212 (7th Cir.1991) ("To prove the presence of a clearly established constitutional right, the plaintiff must point to 'closely analogous cases' decided prior to the defendants' challenged actions."), cert. denied, --- U.S. ----, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992).
 
 
 17
 We therefore hold that in opposing an official's request for judgment based on qualified immunity, the plaintiff's burden includes identifying the universe of relevant statutory or decisional law from which the court can determine whether the right allegedly violated was clearly established. Imposing the burden of proving that the right was clearly established means that a § 1983 plaintiff, confronted with a challenge on grounds of qualified immunity, must show that the particular facts of his case support a claim of clearly established right, and he loses if he does not come forward with statutory or decisional law on which the court can find that the constitutional right allegedly violated was clearly established. See Backlund, 778 F.2d at 1389.
 
 B
 
 18
 Although qualified immunity is an "essentially legal question," Mitchell v. Forsyth, 472 U.S. at 526, 105 S.Ct. at 2815, neither the trial court nor the court of appeals decides what the law is, but instead the question is whether the law with respect to a fact-specific set of circumstances was "so 'clearly established' as to alert a reasonable officer to its constitutional parameters." Romero, 931 F.2d at 627. Whether a right was clearly established requires consideration of legal facts, that is, it requires a balancing by the judge of such things as whether any court has held that a particular constitutional right exists or that conduct similar to that of the officers in the case at hand violates that constitutional right, the number of times the particular right has been recognized and under what circumstances, whether the alleged constitutional right was apparent from the cases even if it had not been expressly recognized, how clear the holdings were, which courts made the decisions, and whether in light of those decisions, a reasonable officer could have believed his conduct to be lawful. The nature of this determination, in light of the burden of proof imposed on the plaintiff to show that the law was clearly established, distinguishes the legal inquiry in qualified immunity cases from both the ordinary civil case and others where constitutional issues are presented. These differences lead us to conclude that appellate review of the resulting determination is appropriately limited to whether the district court erred in concluding that the plaintiff failed to meet his burden on the record of authorities the plaintiff produced.
 
 
 19
 Whereas normally, a district court has to get an issue of law right, and it does not matter which party presents which authorities (or whether the court uncovers them itself) because the court's decision on a purely legal issue is either right or wrong "as a matter of law," imposing the burden of proving that the law was clearly established on the plaintiff--as we do in the unique context of qualified immunity--is without meaning unless the plaintiff has an obligation to produce the legal facts from which the court can determine what the state of the law was at the point of time in the past when the incident occurred. In the ordinary case, the party asserting a claim or defense may have the practical burden of convincing a judge that the law favors his position in the present, but that differs from a legal burden of showing how clearly the law was established at a given point in the past. There may, indeed, be no law that bears on the issue at all, but in the ordinary case that does not mean the proponent will lose. It does, however, mean that the plaintiff must lose in the context of qualified immunity unless the officers' conduct was "so egregious that any reasonable person would have recognized a constitutional violation." Backlund, 778 F.2d at 1390.
 
 
 20
 Similarly, in other cases where constitutional issues are adjudicated, courts declare what the law is (no matter how fuzzy the precedents), but that is a different obligation from determining what the law with respect to an alleged constitutional right was, and how clear it was. When, for example, the issue on a motion to suppress is whether police officers violated a suspect's constitutional rights by coercing him into a confession, there is no question that the district court must divine and apply the law correctly, no matter what cases are cited by the parties. The court of appeals has a correlative obligation to correct error when it occurs. But that is not the task when addressing whether government officials are entitled to qualified immunity from damages. The difference has long been recognized, for, as we stated in Backlund, "qualified immunity shields an official from liability for damages only, not from a finding that he violated constitutional rights." 778 F.2d at 1389 n. 3 (citing Davis, 468 U.S. at 192-93, 104 S.Ct. at 3018).
 
 
 21
 Courts of appeals do not invariably reverse in a civil case whenever a district court gets the law wrong on an issue of law, even if the consequence is that the result would otherwise be different. We do when the legal question is whether a claim for relief is stated, or whether a party is entitled to judgment as a matter of law. We do not when the question is whether instructions accurately state the law, and the party claiming error did not object, see, e.g., Hammer v. Gross, 932 F.2d 842, 847-48 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991); Benigni v. City of Hemet, 879 F.2d 473, 477 (9th Cir.1988); Martinelli v. City of Beaumont, 820 F.2d 1491, 1493-94 (9th Cir.1987), or invited the error about which he complains on appeal. See, e.g., Benigni, 879 F.2d at 477.[4]
 
 
 22
 The determination of whether a specific right was clearly established is closer to the latter kind of "issue of law" than the former. In an adversary system where the plaintiff has the burden of showing that a specific right was clearly established in the law, if the court "gets it wrong" because the universe of cases proffered by the plaintiff in support of his claim that the right was clearly established turns out to be less than all of the potentially relevant legal facts, the plaintiff has invited whatever error occurs.
 
 
 23
 Defining the plaintiff's burden to include identification of relevant authority in the unique context of qualified immunity should have no unsettling effect on the orderly development of constitutional law. So far as the particular case is concerned, the district court may still find that the plaintiff's constitutional rights were violated even though at the time of the incident, the right was not so clearly established that an official should have to respond in damages for his conduct. Backlund, 778 F.2d at 1389 n. 3 (citing Davis, 468 U.S. at 192-93, 104 S.Ct. at 3018). By the same token, an appellate decision that the district court did not err on the record before it in determining that a right was not clearly established based on the universe of authorities produced by the plaintiff is precedential only on whether the specific right allegedly violated was clearly established at a particular point in time, see Baker, 887 F.2d at 187 (post-incident cases which considered whether law governing child abuse investigations was clearly established in 1986, at time of incident in question, are relevant persuasive authority on this issue); it has no precedential effect on whether such a constitutional right exists or was violated, or as to a subsequent case where the record is different.
 
 
 24
 Accordingly, we shall review the district court's determination that a § 1983 plaintiff has (or has not) met the burden of showing that the law was clearly established for purposes of overcoming an official's request for judgment on grounds of qualified immunity for whether its conclusion was correct based on the legal facts identified by the plaintiff.III
 
 
 25
 Our holding does not mean that it is inappropriate for a district court to come up with relevant law on its own, anymore than it is inappropriate for a district judge to ask questions and thereby elicit evidence on his own. However, the district court has no obligation to do either in the unique context of qualified immunity. Where the plaintiff bears the burden of proof that the law was clearly established, as the plaintiff does in overcoming a request for judgment on the ground of qualified immunity, and based on the record adduced fails to meet it, we hold only that the district court does not commit reversible error by failing to fill in the holes.
 
 
 26
 We are satisfied that no injustice results to Elder. First, the unproffered authority, Al-Azzawy, is not entirely advantageous. Because our ultimate holding in that case was expressly grounded on the conclusion that exigent circumstances justified the suspect's arrest and the subsequent warrantless search, 784 F.2d at 895, our initial conclusion that the arrest had taken place "inside" the house was unnecessary dicta. Given our adversary system, we are unwilling to say that Elder should be stuck with our take on a case that his counsel thinks is distinguishable, but rather believe that when the plaintiff has the burden of adducing the legal facts necessary to prove that the law was clearly established, the record upon which that determination is made is his call rather than ours. Second, assuming that Elder's failure to proffer Al-Azzawy was inadvertent, and the district judge did not find it either, we are hard-pressed to say that the law was so clearly established that a reasonable law enforcement officer in Holloway's shoes would understand that what he was doing violated a constitutional right. See Ward v. County of San Diego, 791 F.2d 1329, 1332 (9th Cir.1986) (the court does not "require of most government officials the kind of legal scholarship normally associated with law professors and academicians"), cert. denied, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).
 
 
 27
 For these reasons we conclude that the plaintiff in a § 1983 action, who bears the burden of showing that the constitutional right allegedly violated was clearly established at the time of the alleged misconduct, must identify the body of law which proves that the right was so clearly established that a reasonable officer would be alerted to its constitutional parameters. If the universe of statutory or decisional law proffered by the plaintiff does not show that the right allegedly violated was clearly established at the time of the incident, the district court does not commit reversible error by considering only the legal facts presented and determining, correctly, that based on those legal facts the plaintiff has not shown that the contours of the right were clear.
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 Elder's view is that "all cases are distinguishable." We assume he takes this position because of Al-Azzawy 's ultimate holding, that exigent circumstances justified the officers' conduct in that case. That holding ultimately cuts against Elder in this action, and may explain why he did not proffer Al-Azzawy in opposition to Holloway's motion
 
 
 [2]
 Maraziti, 953 F.2d at 523; Romero, 931 F.2d at 627; Bryant v. United States Treasury Dep't, 903 F.2d 717 (9th Cir.1990), rev'd, Hunter v. Bryant, --- U.S. ----, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); DiMartini v. Ferrin, 889 F.2d 922, 927-29 (9th Cir.1989), amended on other grounds, 906 F.2d 465 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991); Baker v. Racansky, 887 F.2d 183, 186 (9th Cir.1989); Tribble v. Gardner, 860 F.2d 321 (9th Cir.1988), cert. denied, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989); Bothke v. Fluor Eng'rs & Constructors, Inc., 834 F.2d 804, 808 (9th Cir.1987); Tomer v. Gates, 811 F.2d 1240 (9th Cir.1987); Backlund v. Barnhart, 778 F.2d 1386, 1389-90 (9th Cir.1985); Fendler v. United States Parole Comm'n, 774 F.2d 975, 980 (9th Cir.1985)
 
 
 [3]
 We simply make explicit in this case what was implicit in Backlund, where we said:
 We do not hold that Section 1983 plaintiffs must always find a case on point in their favor to show that their rights were clearly established. Certainly they need not always produce binding precedent. Capoeman v. Reed, 754 F.2d 1512, 1514-15 (9th Cir.1985). There may be cases of conduct so egregious that any reasonable person would have recognized a constitutional violation. The Backlunds have failed to show that this was such a case. Indeed, they have failed to show a violation of any constitutional right, clearly established or not.
 Backlund, 778 F.2d at 1390 (footnote omitted).
 
 
 [4]
 We also, of course, do not consider legal issues not raised or ruled upon in the district court. Examples include those matters that can be urged by way of a Rule 12 motion that are waived unless made with the answer, see, e.g., Fed.R.Civ.P. 12(h)(1) (defenses of lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process waived if omitted from pre-answer motion, if any, or answer); Benny v. Pipes, 799 F.2d 489, 492 (9th Cir.1986) (A "general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction."), amended on other grounds, 807 F.2d 1514 (9th Cir.), cert. denied, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987); Chilicky v. Schweiker, 796 F.2d 1131, 1135-36 (9th Cir.1986) (if party files pre-answer motion but fails to raise defense of lack of personal jurisdiction in that motion, defense is waived), rev'd on other grounds, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); and issues that could have been joined by a motion for directed verdict, but cannot be pressed on appeal unless that motion is made, see, e.g., Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1493 (9th Cir.1986) (sufficiency of evidence not reviewable on appeal unless motion for directed verdict was made in trial court); United States v. 33.5 Acres of Land, 789 F.2d 1396, 1400 (9th Cir.1986) (same, but noting limited exception for plain error resulting in manifest miscarriage of justice). We never consider facts not presented to the district court. United States v. Elias, 921 F.2d 870, 874 (9th Cir.1990). And, the relevant record on review of summary judgments is the record as it existed at the time the motion was considered. Harkins Amusement Enters., Inc. v. General Cinema Corp., 850 F.2d 477, 482 (9th Cir.1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 817, 102 L.Ed.2d 806 (1989)